UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICHARD ROY SCOTT,

                    Plaintiff,

   v.

KELLY CUNNINGHAM,

                    Defendant.

No. C11-5509 BHS/KLS

**ORDER GRANTING DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Before the Court is Defendant's Motion for Protective Order. ECF No. 164. Having reviewed the motion and supporting declarations (ECF Nos. 165 and 166), Plaintiff's response (174), and balance of the record, the Court finds that the motion should be granted.

**BACKGROUND**

One of the three specific claims Mr. Scott raises in his amended complaint is that there is a lack of emergency services at the SCC. ECF No. 2. For example, he alleges there are no longer ambulance, fire department, or emergency response services linking the SCC to the ferry. *Id.* Mr. Scott sought and was granted leave to conduct discovery regarding this claim. ECF No. 99. Specifically, he was granted leave to request that Defendant Cunningham produce "medical services policies, including policy 860." *Id.* at 2.

Mr. Cunningham submitted a copy of *former* SCC Policy 860, *Emergency Medical Response,* dated April 22, 2009, for the Court's *in camera* review. ECF No. 242. Even though Mr. Cunningham acknowledged that SCC Policy 860 had been discontinued in early 2011, he still sought a protective order regarding its production because the former policy was incorporated into the current plan. ECF No. 166. This Court found that former SC Policy 860 is

ORDER - 1

not relevant to Mr. Scott's claim but ordered Defendant to produce a copy of the present policy under seal, along with specific reasons why the present policy or portions of the policy should not be produced to Mr. Scott in discovery. ECF No. 256. Counsel for Defendant provided the Court with a copy of SCC's Emergency Response Plan For The SCC Total Confinement Facility On McNeil Island (Emergency Response Plan) under seal. ECF No. 274, Attachment A.

## DISCUSSION

Fed.R.Civ.P. 26(c)(1) provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... forbidding the disclosure or discovery." Fed.R.Civ.P. 26(c)(1)(A). Rule 26(c) authorizes the court to override the presumptively public disclosure where good cause is shown. *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir.1999). To obtain a protective order, the party resisting discovery or seeking limitations must, under Rule 26(c), show good cause for its issuance. Specifically, the moving party must make a clear showing of a particular and specific need for the order. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975). The decision to issue a protective order rests within the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir.1990).

SCC's Emergency Response Plan is a confidential document that is exempt from Washington's Public Records Act. Wash. Rev. Code 42.56.420. RCW 42.56.420(2) states:

> (2) Those portions of records containing specific and unique vulnerability assessments or specific and unique emergency and escape response plans at a city, county, or state adult or juvenile correctional facility, or secure facility for persons civilly confined under chapter 71.09 RCW, the public disclosure of which would have a substantial likelihood of threatening the security of a city, county, or state adult or juvenile correctional facility, secure facility for persons civilly confined under chapter 71.09 RCW, or any individual's safety

RCW 42.56.42(2)

ORDER - 2

Thus, the Emergency Response Plan is not available for members of the general public or SCC residents to view. Former SCC Policy 860 was incorporated into the Emergency Response Plan after the Department of Corrections vacated McNeil Island in 2011. ECF No. 274 (Declaration of Donna Hamilton, Attachment A (excerpted SCC Emergency Response Plan filed under seal) (pages of the Emergency Response Plan relating to responding to medical emergencies, the subject of former SCC Policy 860, are at pp. 22-24).

The general protocol for emergency response between former SCC Policy 860 and the current Emergency Response Plan is similar. The revised Emergency Response Plan, however, reflects the activities for which SCC staff is now tasked that formerly were the responsibility of the Department of Corrections (DOC). The Emergency Response Plan contains information such as specific sequencing, communication trees, and priority of pulling staff and backfilling positions. This information could be used by residents to plan or otherwise take advantage of a medical or other emergency to escape, assault staff or residents, access weapons or drugs (such as drugs kept in the medical department), or otherwise create a risk while staff are responding to an emergency. ECF No. 166, at 2 (Declaration of Cathi D. Harris, SCC Chief of Residential and Security Operations). Thus, Defendant Cunningham argues that allowing Mr. Scott to view or possess the Emergency Response Plan will burden the safety and security of the SCC program, facility, residents and staff, and the community at large. *Id.*

Defendant Cunningham also argues that production of the Emergency Response Plan is not relevant to determining whether he exercised his professional judgment regarding emergency medical response at SCC because evidence previously provided in this case reflects that the emergency medical response at SCC meets the professional judgment standard. ECF No. 273, at 3 (citing *Youngberg v. Romeo,* 457 U.S. 307, 322 (1982)). In a declaration submitted in

ORDER - 3

opposition to Mr. Scott's motion for summary judgment, SCC's Chief of Security Operations described the emergency medical response operations as they now exist at the SCC. Ms. Harris states that when McNeil Island Corrections Center (MICC) moved off island, 53 Residential RRC-2 positions assigned to security posts were reclassified as Security Guard 2s (SG-2). ECF No. 149 (Third Declaration of Cathi D. Harris), ¶ 3. Of those, 42 entering into the SG-2 classification received extensive training in emergency response operations including 160 hours of fire response training, 85 hours of Medical First Responder Training, and 33 security staff received 32 hours of secure escort training. *Id.* The SCC increased the less lethal emergency response team by a full team (seven additional staff members). Persons entering these positions undergo approximately 40 hours of initial specialized training. *Id.*

In addition, the SCC conducts full-scale emergency response exercises several times a year on all three shifts. *Id.* ¶ 4. These drills can include the full participation from the SCC security force, the SCC health clinic, the SCC fire department, and the on-site supervisor's role as the initial incident commander. Exercises include designated observers as well as participants, and the participants do not know the type of emergency being drilled until confronted with the events during the exercises. *Id.* The SCC has two ambulances on the island certified pursuant to Wash. Rev. Code, chapter 18.73. ECF No. 149 (Third Declaration of Cathi D. Harris), ¶ 5. In addition to the ferry, SCC has a rescue speedboat to transport patients to the mainland when necessary as well as access to helicopter evacuation as needed. *Id.*

The McNeil Island Fire Department serves SCC. The fire station is located five minutes from the SCC total confinement facility and the Secure Community Transition Facility. The fire station is staffed 24 hours per day and is managed by a fire chief, an assistant fire chief and four fire captains. Each shift, SCC security guard staff members are identified who are assigned fire

ORDER - 4

department callout duties for the shift. In addition a SCC Security staff member is designated as the Emergency Medical Responder who provides assistance to the medical staff as needed. ECF No. 149 (Third Declaration of Cathi D. Harris), ¶ 6.

Defendant Cunningham's articulated reason for seeking the protective order is the fear that Mr. Scott will use the specific sequencing, communication trees, and priority information contained within the Emergency Response Plan to take advantage of an emergency or to create an emergency to escape, assault staff or residents, access weapons or drugs, or otherwise create a risk during a medical or other emergency at the SCC. The Court finds that Defendant Cunningham has demonstrated to the satisfaction of this Court that good cause exists for the issuance of the proposed protective order. Defendant's fear for the safety and security of the SCC program, facility, residents and staff, and the community at large is legitimate and the Emergency Response Plan is otherwise exempt from disclosure to the public and residents of the SCC under Washington law. Mr. Scott has not shown how this protective order hinders his ability to prove his case.

Accordingly, it is **ORDERED:**

(1)   Defendant's motion for protective order (ECF No. 164) is **GRANTED.**

(2)   The Clerk shall send a copy of this Order to Plaintiff and counsel for Defendant.

**DATED** this  3rd  day of May, 2012.

Karen L. Strombom
United States Magistrate Judge

ORDER - 5